**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

EWIN OSCAR MARTINEZ,           )
                               )
                Plaintiff,     )
v.                             )               **Civil Action No. 5:14-0102**
                               )
UNITED STATES OF AMERICA, *et al.*, )
                               )
                Defendants.    )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 25), filed on April 10, 2015; and (2) Plaintiff's "Motion in Opposition to the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 29), filed on April 30, 2015. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4ᵗʰ Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 27.) Plaintiff filed his "Motion in Opposition" on April 30, 2015. Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted and Plaintiff's Motion should be denied.

## FACTUAL AND PROCEDURAL HISTORY

On January 3, 2014, and May 27, 2014, Plaintiff, acting *pro se*,[1] filed his Complaint and Amended Complaint in this matter claiming entitlement to relief pursuant to Federal Tort Claims

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 6.) Plaintiff names the following as Defendants: (1) United States of America; (2) William Westcott; and (3) James Hamrick. (Id.) In his Complaints, Plaintiff alleges that Defendants engaged in retaliatory conduct following his request for administrative remedy forms. (Id.) Plaintiff explains that following a conflict with Officer Austin on December 3, 2013, Plaintiff requested administrative remedy forms from Defendant Westcott. (Id.) Plaintiff claims that Defendant Westcott became very angry when he learned that Plaintiff planned to file a BP-8 against Officer Austin, and Defendant Westcott told Plaintiff to get out of his office that he would provide the forms at a later time. (Id.) Plaintiff complains that on December 12, 2013, Defendant Westcott removed Plaintiff from the first floor bubble where he was housed.[2] (Id.) Plaintiff states that Defendant Westcott placed him in a second floor cell despite Plaintiff's medical restriction for first floor placement. (Id.) Plaintiff alleges that on December 18, 2013, he contacted Mr. Thomas and Dr. Edward concerning his second floor

---

[2] An inmate does not have a liberty interest in a certain housing assignment. *See Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989)(stating that "the law is clear that prisoners have no constitutionally protected liberty interest in remaining in a particular wing of a prison"); *Hewitt v. Helms*, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994), *citing Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"); *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978)(holding that federal due process constraints are not implicated because the classification of a State prison inmate is a matter of State prison officials' discretion); and *Meachum v. Farno*, 427 U.S. 215, 225 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest).

2

placement. (Id.) Plaintiff contends that Physician Assistant Cooper contacted Defendant Westcott instructing him to return Plaintiff back to the first floor due to his medical conditions. (Id.) Plaintiff contends that Defendant Westcott continued to refuse to move Plaintiff to the first floor. (Id.) Plaintiff further contends that he again requested, and was denied, BP-8 forms from Defendants Westcott and Hamrick. (Id.) Plaintiff states that he contacted the Warden by e-mail on December 27, 2013, complaining of the foregoing situation. (Id.) Plaintiff alleges that Defendant Westcott then "removed an inmate, who is an active member of a gang (the most numerous gang of this institution, 'Virginia Blacks'), and commanded Plaintiff to move to that open cell on the first floor." (Id.) Plaintiff states that "members of that gang started harassing Plaintiff with threats and insulting him."[3]

---

[3] In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977. First, Plaintiff fails to allege facts indicating that he was incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff's conclusory allegation that Defendants put his life in danger is insufficient. Plaintiff alleges that he was verbally harassed, threatened, and insulted by members of a gang in the prison. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. *See Farmer*, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each Defendant knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendant Westcott and Hamrick's attempt to move him to a cell on the first floor. Plaintiff's claim that Defendants should be liable due to the possibility that Defendant Westcott and Hamrick's attempt to move him into a first floor cell with gang members could have resulted in Plaintiff's life being threaten by other inmates is insufficient. *See Henslee v. Lewis*, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); *Langston v. Fleming*, 38 F.3d 1213 (4th Cir. 1994)(*unpublished opinion*)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other inmates that he was charged with rape). Finally, the verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *also see Lindsey v. O'Connor*, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); *Collins v. Cundy*, 603 F.2d 825,

(Id.) Plaintiff claims that he approached Defendant Hamrick stating that "your Counselor Westcott conspired to send me to SHU or to the hospital or both. Those guys in the Unit want to assault me because your Counselor is trying to provoke a situation to remove me from his compound." (Id.) Plaintiff complains that Defendant Hamrick stated that "The only way I have to reverse the counselor's order is that you waive your medical pass signing a 'cop-out' in which you tell me that you want to stay upstairs in the cell 203." (Id.) Plaintiff states that he signed the "cop-out" because he was scared for his safety. (Id.) Plaintiff alleges that Defendant Westcott warned him that if Plaintiff continued to complain or file any administrative remedies concerning his assignment to a second floor cell, Defendant Westcott would return him to the first floor cell with the "Virginia Blacks." (Id.) Plaintiff asserts that he again complained to Defendant Hamrick of his second floor cell placement on January 6, 2014. (Id.) Plaintiff claims that Defendant Hamrick became angry and "repeated exactly what Westcott done before, but this time with the gang of white guys." (Id.) Plaintiff states that he refused to be moved because "the white guys would have assaulted me" and Defendant Hamrick placed him in the SHU. (Id.) Plaintiff contends that there were other available cells on the first floor, but Defendants Westcott and Hamrick placed Plaintiff in the cell with the gang members in retaliation for him requesting administrative remedy forms.[4] (Id.) Plaintiff contends

_____

827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation).

[4] Prison officials may not retaliate against inmates for their exercise of a constitutional right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995); *American Civil Liberties Union of Md, Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993)(*citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The Fourth Circuit has held that an inmate's claim of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations omitted). To prevail upon a claim of retaliation,

that Defendants' conduct put his safety in jeopardy and caused him to suffer severe pain from the tumors on his right shoulder and left heel. (Id.) As relief, Plaintiff requests monetary damages. (Id.)

By Order entered on January 7, 2015, United Magistrate Judge R. Clarke VanDervort granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 11.) On April 10, 2015, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 25 and 26.) First, Defendants argue that Plaintiff's FTCA claim should be dismissed because: (1) "The United States is the only proper party in an FTCA claim" (Document No. 26, pp. 10 - 11.); (2) "Plaintiff's FTCA claim was not properly exhausted" (Id., pp. 11 - 15.); and (3) "Plaintiff's claim must be dismissed because his injury is consider de minimis under the FTCA" (Id., pp. 15 - 18.). Next, Defendants argue that Plaintiff's Bivens claims should be dismissed because: (1) "Plaintiff failed to exhaust administrative remedies" (Id., pp. 18 - 21.); (2) "Plaintiff cannot recover for

---

the inmate must specifically demonstrate that but for his protected conduct, he would not have been subject to the alleged retaliatory act. *See Huang v. Board of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990). Essentially, the inmate must first demonstrate that he engaged in protected conduct and second that his protected conduct motivated the retaliatory act.

Plaintiff claims that prison officials retaliated against him for filing, or attempting to file, grievances. The Fourth Circuit, however, has recognized that inmates have "no constitutional right to participate in grievance proceedings." *Adams*, 40 F.3d at 75. Since Plaintiff has no constitutional right to participate in grievance procedures, he has failed to establish a claim of retaliation. *See White v. Francis*, 2008 WL 2705102 (N.D.W.Va. Jul. 9, 2008)(finding that "[b]ecause there is no constitutional right to file a grievance, retaliation against [plaintiff] for filing one does not meet the requirements of a retaliation claim"), *aff'd*, 325 Fed. Appx. 214 (4th Cir. 2009), *cert. denied*, 130 S.Ct. 1287, 2010 WL 250973 (2010); *Alqam v. United States*, 2008 WL 2945492, n. 8 (N.D.W.Va. Jul. 24, 2008)(finding that plaintiff failed to state a claim by alleging that he was transferred in retaliation for filing administrative grievances); *Bane v. Virginia Dept. of Corrections*, 2007 WL 1378523 (W.D. Va. May 8, 2007)(stating that because "there is no constitutional right to participate in grievance proceedings, [plaintiff] is barred from claiming that the transfer was made in retaliation to the exercise of a constitutionally protected right"). Accordingly, the undersigned finds that Plaintiff's claim of retaliation should be dismissed.

emotional or psychological damages without a showing of physical injury" (Id., pp. 22 - 23.); (3) "Plaintiff's claim of retaliation must fail" (Id., pp. 23 - 24.); (4) "Verbal harassment and/or threats do not rise to the level of a constitutional violation" (Id., pp. 24 - 25.); (5) "Plaintiff has no protected interest in being housed in a cell or with the cellmate of his choice" (Id., pp. 25 - 26.); (6) "Plaintiff's claims of cruel and unusual punishment under the Eighth Amendment based on three-man cells with timed toilet flushing must be dismissed" (Id., pp. 26 - 28.); (7) Plaintiff cannot establish that Defendants had the requisite culpable state of mind to establish his failure to protect claim (Id., pp. 28 - 30.); and (8) "Defendants are entitled to qualified immunity" (Id., pp. 30 - 33.)

As Exhibits, Defendants attach the following: (1) The Declaration of Sarah Lilly (Document No. 25-1.); (2) A copy of Administrative Tort Claim No. TRT-MXR-2014-01923 (Document No. 25-2, pp. 2 - 5.); (3) A copy of the "Tort Claim Investigation" (Id., pp. 7 - 8.); (4) A copy of the denial letter from the United States Department of Justice regarding Administrative Tort Claim No. TRT-MXR-2014-01923 (Id., p. 10.); (5) A copy of Plaintiff's pertinent medical records (Id., pp. 12 - 74.); (6) A copy of SENTRY Administrative Remedy Generalized Retrieval (Document No. 25-3.); (7) A copy of SENTRY "Inmate History Quarters" (Document No. 25-4.); (8) A copy of Remedy ID No. 765314 (Document No. 25-5.); (8) A copy of pertinent Administrative Remedies (Document No. 25-6.); (9) The Declaration of W. Westcott (Document No. 25-7.); (10) The Declaration of J. Hamrick (Document No. 25-8.); (11) A copy of United States Attorney R. Booth Goodwin II's "Certification" (Document No. 25-9.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 13, 2015, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 27.) On April 30,

6

2015, Plaintiff filed his "Motion in Opposition to the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 29) First, Plaintiff alleges that Ms. Lilly "lied and attempted to commit fraud before the Court" in filing her Declaration. (Id., p. 1 - 2.) Plaintiff disputes statement Number 17, which states that Plaintiff was provided with administrative remedy forms. (Id.) Plaintiff explains that he was only provided with those forms because he intended to file administrative remedies concerning claims regarding FCI Berlin. (Id.) Plaintiff further appears to dispute Ms. Lilly's statement that Plaintiff filed 171 administrative remedies. (Id., p. 2.) Plaintiff contends that "each administrative remedy has four steps (BP-8, BP-9, BP-10, and BP-11), so those 171 constitute only about 40 claims in 16 years." (Id.) Plaintiff states that he did not exhaust his remedies because "he was threatened by the defendants whom threatened him with a danger or retaliation even if plaintiff merely had insisted to get the remedy forms." (Id.) Third, Plaintiff states that "he rejects as false the statements filed by Defendants." (Id., p. 2.) Finally, Plaintiff states that he rejects all of Defendants' "non-assertive theories" for dismissal. (Id., p. 3.) Plaintiff, therefore, argues that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" should be denied. (Id.)

On October 13, 2015, Plaintiff filed his Motion for "Filing of Documentary Additional Evidence in Support of Plaintiff's Claims."[5] (Document No. 34.) As an attachment, Plaintiff attaches a copy of the Affidavit of Inmate Cecil James Messer, Jr. (Id., p. 1.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

---

[5] By separate Order entered this day, the undersigned has granted Plaintiff's Motion.

7

as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(<u>quoting</u> <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### **Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element

of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

### 1.   FTCA Claim:

#### A.   The United States as a Party.

In its Motion, the United States argues that Defendants Westcott and Hamrick should be dismissed as to Plaintiff's FTCA claim and the United States substituted as the Defendant. (Document Nos. 25 and 26.) In support, the United States Attorney filed a "Certification" stating that Defendants were acting within the scope of their employment. (Document No. 25-9.) Plaintiff states that he rejects Defendants' "non-assertive theory" for dismissal. (Document No. 29, p. 3.)

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq*., authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive

damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the State in which the action accrued.

Defendants attach a "Certification" by the United States Attorney stating that "[o]n the basis of the information now available with respect to the allegations referred to therein, U.S. Bureau of Prisons employee[s] William Westcott [and] James Hamrick [were] acting within the scope of [their] employment as an employees of the United States at the time of the incident out of which the claim arose."[6] (Document No. 25-9.) A United States Attorney's certification "is conclusive unless challenged." Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th Cir. 1997). "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id.; Also see Maron v. United States, 126 F.3d 317,

---

[6] Title 28 U.S.C. § 2679(d)(1) provides as follows:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim is a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

10

323 (4th Cir. 1997). In determining whether certification is proper, the Court reviews the question *de novo*. Gutierrez, 111 F.3d at 1154. The plaintiff must present "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Id. at 1155. If the plaintiff presents evidence satisfying his burden of proof, the defendant may come forward with evidence in support of the certification. Id. The Court reviews the "certification, the pleadings, the affidavits, and any supporting documentary evidence" for issues of material fact. Id. "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and evidentiary hearing." Id. In determining whether a federal employee was acting within the scope of his or her employment, the Court applies the law of the state where the conduct occurred. Id. at 1156(citing Jamison v. Wiley, 14 F.3d 222, 227 n. 2 (4th Cir. 1994).

Plaintiff's conclusory argument that he rejects the Defendants' "non-assertive theory" for dismissal is without merit. Plaintiff does not allege that the defendant federal employees were acting outside the scope of their employment. Additionally, Plaintiff does not appear to challenge the United States Attorney's "Certification." As stated above, a United States Attorney's certification "is conclusive unless challenged." Furthermore, Plaintiff's Response fails to present "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision." The undersigned, therefore, recommends that Defendants Westcott and Hamrick should be dismissed as to Plaintiff's FTCA claim and the United States substituted as the Defendant.

**B.      Exhaustion of Administrative Remedies.**

In its Motion, the United States argues that Plaintiff failed to exhaust his administrative remedies on his FTCA claim, which deprives this Court of subject matter jurisdiction and requires

dismissal of his FTCA claims. (Document Nos. 25 and 26.) Specifically, the United States explains that Plaintiff properly submitted his administrative tort claim to the agency, but failed to wait for a decision before filing his Complaint with this Court." (Document No. 26, pp. 11 -15.) In response, Plaintiff merely argues that he rejects "the Government's non-assertive theory that Plaintiff did not properly exhaust the FTCA claim." (Document No. 29, p. 15.)

The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[7] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993); Gibbs v. United States, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance

---

[7] Title 28 U.S.C. § 2675(a) provides as follows:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

while a plaintiff presents an administrative tort claim with the appropriate agency.[8] See Plyer v. United States, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision.

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the FTCA. The record reveals that Plaintiff filed his Complaint initiating the instant action on January 3, 2014, and Plaintiff's Administrative Tort Claim was received by the BOP on January 8, 2014.[9] (Document No. 1 and Document No. 25-2, p. 2.) By letter dated February 20, 2014, the BOP denied Plaintiff's Administrative Tort Claim. (Document No. 25-2, p. 10.) Although Plaintiff filed an Amended Complaint on May 27, 2014, which asserted nearly identical allegations as his initial Complaint, such an amendment does not cure his failure to exhaust prior to filing suit. See Hoffenberg v. Provost, 154 Fed.Appx. 307, 310 (3rd Cir. 2005)(finding that the date of the amended complaint cannot serve as the date the federal suit was

---

[8]  The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

[9]  Plaintiff's Administrative Tort Claim is dated January 8, 2014. (Document No. 25-2, p. 2.)

"instituted")(citing, McNeil v. United States, 508 U.S. 106, 111-12, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)); Patterson v. Potope, 2013 WL 1314050 (M.D.Pa. March 28, 2013)(finding that "Plaintiff's reliance on his motions to amend and to supplement, and on his amended complaint, which were filed after the agency claim was denied, is misplaced"); Brown v. Hendershot, 2006 WL 2707432 (M.D.Pa. Sept. 19, 2006)("The filing of an amended complaint does not cure the defect.") Thus, the undersigned finds that Plaintiff clearly filed his Complaint prior to exhausting his administrative remedies. Accordingly, the undersigned recommends that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Plaintiff's FTCA claim.

**3.**     ***De Minimis* Injury:**

In their Motion, Defendants argue that "Plaintiff's claim must be dismissed because his injury is considered *de minimis* under the FTCA." (Document No. 25 and 26.) Specifically, Defendant contends that Plaintiff alleges only the increase in physical pain and speculative advancement of arthritis and arthropathy, which are not more than *de minim injuries*. (Document No. 26, pp. 16 - 18.) In Response, Plaintiff merely argues that he rejects "the Government's non-assertive theory" for dismissal. (Document No. 29, p. 15.)

A plaintiff's FTCA claim must fit into one of the limited areas where Congress waived sovereign immunity. Ali v. Federal Bureau of Prisons, 552 U.S. 214, 215, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008); also see Treasurer of New Jersey v. United States Department of Treasury, 684 F.3d 382 (3rd Cir. 2012)("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacity.") An inmate "can sue under the FTCA to recover damages from the United States Government for personal

injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Specifically, the FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

There are, however, exceptions to the FTCA's waiver of sovereign immunity. Pertinent to the instant case, Section 1346(b)(2) provides as follows:

> No person convicted of a felony . . . while serving a sentence may bring a civil action against the United States . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury.

28 U.S.C. § 1346(b)(2). Although the FTCA does not define "physical injury," courts have held that the "physical injury" need not be significant, but it must be more than de minimis. See Calderson v. Foster, 2007 WL 1010383 (S.D.W.Va. March 30, 2007)(noting that 42 U.S.C. § 1997e(e) is a related statute, which is not satisfied by a de minimis injury), aff'd, 264 FedAppx. 286 (4th Cir. 2008); also see Tsosie v. Bureau of Prisons, 2012 WL 4484935, * 4 (M.D.Pa. Sept. 27, 2012)(de minimis physical injuries "are insufficient to maintain a viable FTCA claim"); Owens v. United States, 2012 WL 6057126, * 5 (E.D.N.C. Dec. 6, 2012)("in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of the negligence" and must show that his injury is "more than de minimis"); Hornes v. United States, 2007 WL 1463028, * 11 (N.D.W.Va. May 17, 2007)(dismissing plaintiff's tort and constitutional claim for mental or emotional damages where plaintiff could not "show a physical injury or that his claim [was] more than de minimis"). A plaintiff bears "the burden of proof to show an unequivocal waiver of sovereign immunity exists and to show

15

that none of the FTCA's waiver exceptions apply." LeRose v. United States, 285 Fed.Appx. 93 (4th Cir. 2008), cert. denied, 555 U.S. 1170, 129 S.Ct. 1313, 173 L.Ed.2d 584 (2009).

In the instant case, Plaintiff seeks physical and emotional damages after Defendants Westcott and Hamrick moved him to a second floor cell. The United States argues that Plaintiff's alleged injuries are *de minimis* because he allegedly suffered only physical pain and aggravation of a pre-existing condition. *De minimis* injuries are injuries such as a "sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. . . . [like those that] people in the regular and ordinary events and activities in their daily lives do not seek medical care for." Perez v. United States, 330 Fed.Appx. 388, 389 (3rd Cir. 2009); also see Hill v. Crum, 727 F.3d 312 (4th Cir. 2013)(citations omitted)(noting that the following injuries are *de minimis*: bruising, swelling, and loosened tooth; hairline fracture to finger that "required little medical treatment and no pain medication;" severe headache; and back and shoulder aches of limited duration); Chavero-Linares v. Smith, 2013 WL 5655559 (N.D. Iowa Oct. 15, 2013)("a relatively minor scratch or cut and cheek pain, even if this cheek pain was ongoing, is still *de minimis* as a matter of law because [plaintiff] suffered no serious long-term pain and received no medical attention for her injury"); Karavias v. Virginia, 2013 WL 3879701, * 4 (W.D.Va. July 26, 2013)(indicating that plaintiff's bruises and scrapes were *de minimis*); Sublet v. United States, 2011 WL 690533, * 3 (W.D.La. Jan. 28, 2011)(finding a bruise to be *de minimis*), aff'd, 451 Fed.Appx. 458 (5th Cir.), cert. denied, ___ U.S. __, 132 S.Ct. 1961, 182 L.Ed.2d 788 (2012); Homen v. United States, 2002 WL 844347 (S.D.N.Y. May 2, 2002)(finding a three-centimeter abrasion that required only minor first aid, "one or two Tylenols," no difficulty sleeping, and no problem going about his daily routine *de minimis*). Physical pain alone is insufficient to constitute more than a *de minimis* injury. See Calderson, 2007 WL 1010383 at * 8(citation omitted)(physical pain alone is a

*de minimis* injury that may be characterized as a mental or emotional injury); Shields v. United States, 2010 WL 2803399 (N.D.N.Y. July 15, 2010)("If plaintiff's injury is *de minimis*, he is not entitled to compensation for pain and suffering."), aff'd, 446 Fed.Appx. 325 (2nd Cir. 2011). Finally, the temporary aggravation of a pre-existing condition is a *de minimis* injury. See Wertish v. Krueger, 433 F.3d 1062 (8th Cir. 2006)(finding minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition to be *de minimis* injuries); Jones v. FCI Beckley Medical Employees, 2013 WL 530861 (S.D.W.Va. January 11, 2013)(finding a forearm contusion and the alleged aggravation of a prior "disc condition" to be *de minimis* where plaintiff's medical records revealed full range of motion, equal strength in bilateral extremities, and no evidence of restriction to daily activities); McKinney v. United States, 2013 WL 4050146 (N.D.Tex. Aug. 9, 2013)(finding lower back pain and minor abrasions to the elbow to be *de minimis* where plaintiff had full range of motion and no evidence of a back injury, other than plaintiff's pre-existing disc degeneration).

Based upon a review of Plaintiff's medical records, the undersigned finds no indication that Plaintiff suffered more than a *de minimis* injury. In his Complaint, Plaintiff alleges that conduct by Defendants Westcott and Hamrick in December, 2013, caused him physical pain. A review of Plaintiff's medical records from January 28, 2013, through November 19, 2014, reveal no complains of significant worsening of his arthritic conditions. (Id., pp. 24 - 34.) On January 28, 2013, Plaintiff was evaluated by Health Service during a Chronic Care visit where he complained of arthritic and joint pain. (Document No. 25-2, p. 12.) Plaintiff rated his pain as a "6 or 7" on a scale to 10. (Id.) On December 18, 2013, Plaintiff was evaluated during a Chronic Care visit where he complained of arthritic and joint pain. (Id., p. 17.) Plaintiff rated his pain as a 8 on a scale to 10. (Id.) A review of Plaintiff's medical records from January 17, 2014, through March 13, 2014, reveal no complains of

worsening of his arthritic conditions or any complaints of pain. (Id., pp. 24 - 34.) On July 17, 2014, a Physician Assistant at FCI Gilmer recommended back exercises, core strengthening, and weight loss. (Id., pp. 35 - 37.) On October 7, 2014, the Clinical Director at USP Marion noted moderate degenerative joint disease in the lower back. (Id., pp. 42 - 46.) The Clinical Director renewed Plaintiff's Medical Duty Status restrictions, but noted it was not "clear why those are in place." (Id., p. 46.) On November 19, 2014, Plaintiff reported to Health Services complaining of shoulder pain after climbing to the top bunk. (Id., pp. 54 - 55.) Plaintiff stated that his shoulder was dislocated and requested referral to a surgeon. (Id.) The Physician Assistant conducted a physical exam and ordered x-rays, which revealed that Plaintiff's shoulder was not dislocated. (Id.) Plaintiff refused a steroid injection. (Id., p. 55) Accordingly, the undersigned finds that at most Plaintiff's alleges a temporary and slight aggravation of a pre-existing condition which is considered *de minimis*. The undersigned, therefore, respectfully recommends that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted.

**2.    Bivens Claim:**

**A.    Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[10] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983,

---

[10] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166

L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an

affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in <u>Anderson</u>, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For <u>Bivens</u> purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject

of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants contend that Plaintiff did not exhaust his administrative remedies regarding his Bivens claims. (Document Nos. 25 and 26.) In support, Defendants submit the Declaration of Ms. Sarah Lilly, a Legal Assistant for the Beckley Consolidated Legal Center. (Document No. 25-1.) Ms. Lilly states that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative

remedy filings. (Id.) Ms. Lilly explains that she also has access to inmates' medical records. (Id.)

Specifically, Ms. Lilly states as follows in her Declaration:

> 9.    A review of SENTRY, the BOP's computerized information system, shows that Plaintiff has filed 171 administrative remedies while in custody of the BOP.
>
> 10.   On Plaintiff's most recent designation to FCI Beckley, he arrived on August 28, 2013, and remained until May 7, 2014.
>
> 11.   Plaintiff did not file any administrative remedies with regard to the claims made in the instant case prior to filing his lawsuit.
>
> 12.   Although Plaintiff claims without specificity that the Defendants were "refusing access" to the administrative remedy process and refused to give him forms while he was housed at FCI Beckley, SENTRY records show that Plaintiff was busy filing administrative remedies during this time.
>
> *  *  *
>
> 18.   Records show that while housed at FCI Beckley, Plaintiff filed the following administrative remedy requests: 744718-R1; 744720-R1 and A1; 742298-R1 and A1; 736563-A1; 761536-F1 and R1; 761543-F1; 761544-F1; 737582-R2; and 765314-F1.

(Id., p. 3.). Defendants, therefore, argue that Plaintiff's Bivens claims are unexhausted and must be

dismissed. (Document No. 26, pp. 20 - 21.)

    In Response, Plaintiff argues that Ms. Lilly "lied and attempted to commit fraud before the

Court" in filing her Declaration. (Document No. 29.) Plaintiff argues that he was only provided with

administrative remedy forms because he intended to file administrative remedies concerning claims

at a different institution. (Document No. 29.)

    In his Complaint, Plaintiff appears to acknowledge that he did not exhaust his administrative

remedies. (Document No. 1, p. 3.) Plaintiff, however, asserted that he failed to exhaust because

Defendants Westcott and Hamrick refused to provided him with BP-8 forms. The record reveals,

however, that Plaintiff had access to the administrative remedy process. Specifically, the record reveals that Plaintiff had access and utilized the administrative remedy process at FCI Beckley where he filed 12 administrative remedy requests (Remedy Id Nos. 744718-R1, 744720-R2, 744720-A1, 742298-R1, 742298-A1, 736563-A1, 761536-F1, 761536-R1, 761543-F1, 761544-F1, 737582-R2, and 765314-F1. (Document Nos. 25-1, 25-5, and 25-6.) The record reveals that Plaintiff was provided with administrative remedy forms by Defendant Westcott, Defendant Hamrick, and Executive Assistant Seafus. (Id.) Although Plaintiff argues that administrative remedy forms were only provided for filing claims regarding allegations of misconduct at FCI Berlin, the record reveals that Plaintiff was provided forms for complaints regarding FCI Beckley. Even though Plaintiff alleges that Defendant Westcott refused to provided him with an Informal Resolution (BP-8) form on December 3, 2013, the record reveals that he was provided with a BP-8 form on December 12, 2013. The record reveals that Defendant Westcott provided Plaintiff with an Informal Resolution form on December 12, 2013, and Plaintiff completed the form complaining of improper treatment of legal mail at FCI Beckley. (Document No. 25-1 and Document No. 25-5, p. 7.) Defendants Westcott and Hamrick both signed the Informal Resolution form indicating that the issues was discussed, but not resolved. (Id.) Plaintiff filed his "Administrative Remedy Request" regarding the foregoing on January 22, 2014 (Remedy Id No. 765314-F1), which was denied by Acting Warden Mark Collins on March 20, 2014. (Document No. 25-5, pp. 2 - 6.) Additionally, by a "Request for Administrative Remedy" dated November 12, 2013, Plaintiff complained that "Counselor Langley [at FCI Beckley] used profane and insulting language over [him] asking her for a BP8." (Document No. 25-6, pp. 5 - 6.) Warden Joel Ziegler denied his "Request for Administrative Remedy" on the same day, and Plaintiff filed his "Regional Administrative Remedy Appeal." (Id., pp. 3 - 4.) On

24

January 14, 2014, Regional Director C. Eichenlaub denied Plaintiff's appeal. (Id., p. 2.) Thus, Plaintiff was clearly provided with administrative remedy forms for filing claims concerning FCI Beckley.

Furthermore, the undersigned finds that Plaintiff could have obtained the administrative forms from Administrative Remedy Coordinator Seafus. (Document Nos. 25-1 and 25-6.) In her Declaration, Ms. Lilly states as follows:

> 19.    [Executive Assistant] Ms. Seafus, who was also FCI Beckley's Administrative Remedy Coordinator, wrote a Memorandum or otherwise assisted with Plaintiff's submission of Remedy IDs 761536, 744720, 761543-F1, and 761544.
>
> 20.    In response to an Inmate Request to Staff ("cop-out") form Plaintiff submitted on November 7, 2013, Ms. Seafus noted that she was providing him with copies of 3 BP-8 forms per his request.
>
> 21.    She also advised Plaintiff that he would need to obtain forms from his Unit Team, and one completed, they would be submitted to her office for submission to FCI Berlin for response.
>
> 22.    Remedy ID No. 744720 contains a Memorandum for Ms. Seasfus explaining his late submissions.
>
> 23.    On the remaining two remedies, Remedy ID No. 761544 and 761543, Ms. Seafus made a notation in the bottom right corner of the Information Resolution forms that she provided the forms to Plaintiff on November 7, 2013.

(Document No. 25-1, p. 4.) Thus, Plaintiff could have obtained any necessary forms from Ms. Seafus. Therefore, the record fails to support Plaintiff's conclusory claim that Defendants Westcott and Hamrick prevented him from exhausting by refusing him access to administrative remedy forms. See Ruggiero v. County of Orange, 467 F.3d 170, 178 (2nd Cir. 2006)(affirming dismissal for failure to exhaust because Plaintiff "points to no affirmative act by prison officials that would have

prevented him from pursuing administrative remedies."); Sheldon v. Bledsoe, 2007 WL 806124 (W.D.Va. March 15, 2007)(finding plaintiff's "vague and conclusory statements that he was denied the use of the administrative remedy procedures cannot withstand defendants' specific evidence about his administrative remedy history on issues unrelated to this case"). Accordingly, the undersigned recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Plaintiff's Bivens claim.

### B.    Emotional or Psychological Damages:

In their Motion, Defendants argue that Plaintiff's claim for emotional or psychological damages should be dismissed. (Document No. 26, pp. 22 - 23.) Defendants argue that "[u]nder the PLRA, no inmate may bring any civil action against the United States or an employee of the Government for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Document No. 70, p. 19.) Defendants claim that Plaintiff does not allege any physical injury. (Id.) Defendants note that Plaintiff only alleges an increase in physical pain. (Id.) Defendants asserts that physical pain alone is an emotional injury. (Id.) Plaintiff failed to address the above issue in his Response. (Document No. 29.)

The Prison Litigation Reform Act [PLRA] expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than *de minimis*. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown

& Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112

F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a]

plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements

that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation

occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional

distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir.

2001), quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks

omitted).

    In his Complaint, Plaintiff requests damages for the physical pain he suffered. (Document

Nos. 1 and 6.) Plaintiff, however, fails to allege any facts supporting the existence of a physical

injury as the result of Defendants' conduct. Plaintiff allegation of physical pain is insufficient as

physical pain alone is considered an emotional injury. See Calderon v. Foster, 2007 WL 1010383,

* 8 (S.D.W.Va. March 30, 2007)(J. Johnston). As stated above, at most Plaintiff has alleged only a

*de minimis* injury. Thus, Plaintiff's conclusory allegation that he is entitled to damages is inadequate.

Accordingly, the Court finds that Defendants' "Motion to Dismiss, or in the Alternative Motion for

Summary Judgment" should be granted. The undersigned finds it unnecessary to consider the other

reasons which Defendants have submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

    The undersigned therefore respectfully **PROPOSES** that the District Court confirm and

accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants'

"Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 25),

**DENY** Plaintiff's "Motion in Opposition to the Dependants' Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment" (Document No. 29), and **DISMISS** Plaintiff's Complaints (Document Nos. 1 and 6), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 19, 2016.

Omar J. Aboulhosn
United States Magistrate Judge